UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROY WEIN,

                                          Plaintiff,

                    -v-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                                          Defendant.

18 Civ. 11141 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Roy Wein, a tenured teacher employed by the New York City Department of Education ("DOE"), here sues the DOE for employment discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); and the Rehabilitation Act of 1971, 29 U.S.C. § 701 *et seq.*  Wein alleges that he received a number of negative evaluations, and faced disciplinary proceedings and reassignments, because of his age and disability, and that the DOE retaliated against him by similar means for complaining about this treatment to the New York State Department of Human Rights ("SDHR").

The DOE now moves on multiple grounds for summary judgment.  It argues that Wein failed to exhaust all but one of his claims before the SDHR, that the claim he did exhaust is barred by collateral estoppel, and that his claims are not supported by sufficient evidence.  Wein counters that his claims are properly before the Court and that disputes of material fact preclude summary judgment.  For the following reasons, the Court holds that although most of Wein's claims are not procedurally barred, none are supported by sufficient evidence.  Therefore, the Court grants the DOE's motion in full.

I.      **Background**

    A.      **Factual Background**[1]

        1.      **Wein's Employment with the DOE**

Wein is currently employed as a tenured DOE teacher.  JSF ¶ 1; Def. 56.1 ¶ 1.  Between 2001 and May 23, 2018, he was assigned to P.S. 96, where he primarily taught pre-kindergarten ("pre-K") students.  Def. 56.1 ¶¶ 2, 4, 11, 13.  On May 23, 2018, he was reassigned to a non-student-contact position pending the resolution of an open investigation.  JSF ¶ 6.  Born in 1958, Wein has been over age 40 since he was first assigned to P.S. 96.  *See* Finder Decl. Ex. M ("SDHR Complaint") at 5.

        2.      **The DOE's Teacher-Evaluation Systems**

Each year, the DOE provides teachers with a year-end written evaluation in the form of an Annual Professional Performance Review ("APPR").  *See, e.g.*, JSF ¶ 2; Def. 56.1 ¶¶ 9, 12.  Teachers also receive feedback via more frequent "observation reports" and, sometimes, disciplinary letters during the school year.  *See, e.g.*, Def. 56.1 ¶¶ 7, 14.  This periodic feedback

---

[1] The Court draws its account of the underlying facts from the parties' respective submissions on the motion for summary judgment, including: the parties' joint statement of undisputed facts, Dkt. 41 ("JSF"); defendant's Local Rule 56.1 statement, Dkt. 44 ("Def. 56.1"); plaintiff's Local Rule 56.1 counter-statement, Dkt. 47 ("Pl. 56.1"); the declaration of Brittany J. Finder in support of defendant's motion, Dkt. 43 ("Finder Decl."), and attached exhibits; and the declaration of Bryan D. Glass in support of plaintiff's motion, Dkt. 46 ("Glass Decl."), and attached exhibits.

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein.  When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

may later form part of the basis for an APPR. *See, e.g.*, Finder Decl. Ex. E ("2015–2016 APPR") at 3.

Relevant here, the DOE uses two different rating systems to provide this feedback to teachers. Some teachers, including those who teach at the pre-K level or who do not maintain "active status" for at least six calendar months during a school year, receive APPR ratings along a simple binary scale: "satisfactory" or "unsatisfactory." Def. 56.1 ¶ 24; *see, e.g.*, 2015–2016 APPR at 2. Other DOE employees, including "general education teachers," are rated under a more complex scheme: the *Advance* "HEDI" system (the "HEDI system"). Def 56.1 ¶¶ 64–65. Under this system, teachers receive an overall, year-end rating based on the combination of their annual ratings in two subcategories: Measures of Teacher Practice ("MOTP") and Measures of Student Learning ("MOSL"). *Id.* Each such rating is assigned along a broader scale, ranging from "highly effective" to "effective," "developing," and, at the nadir, "ineffective." *Id.*; *see* Finder Decl., Ex. I ("2016–2017 *Advance* Guide") at 3.

In general, the interim or periodic observation reports Wein received used the same rating system that would be used for him at the end of the school year. *See, e.g.*, Def. 56.1 ¶¶ 7, 9 (showing that Wein received an unsatisfactory formal observation report during the 2013–2014 school year, when he was rated satisfactory on his APPR); *id.* ¶¶ 53, 65–66 (showing HEDI ratings both for 2017–2018 observation reports and the 2017–2018 APPR). Because Wein was a pre-K teacher before the 2016–2017 school year and, as discussed below, was not on "active status" for six months during the 2016–2017 school year, he was not eligible for the HEDI system for most of his career at P.S. 96, and was instead was rated on the "S/U" scale. *See* Def. 56.1 ¶¶ 25, 36; Glass Decl. Ex. 5. In 2017–2018, however, he became eligible for, and—for the first time in his career—was rated under the HEDI system. *See* Def. 56.1 ¶ 65.

### 3. Wein's 2013–2014 and 2014–2015 Teaching Evaluations

During the 2013–2014 school year, then-Principal Betty Lugo gave Wein an overall satisfactory rating after issuing him an unsatisfactory formal observation report earlier in the year, the latter of which Wein signed while noting his protest of the rating.[2] *Id.* ¶¶ 7, 9. During the 2014–2015 school year, when David Pretto replaced Betty Lugo as the principal of P.S. 96, Wein again received a satisfactory APPR rating. *Id.* ¶¶ 10–12. Wein taught pre-K both of these years. *See id.* ¶¶ 4, 11; JSF ¶ 15.

### 4. Wein's 2015–2016 Teaching Evaluations

In the 2015–2016 school year, the quality of Wein's evaluations declined. On October 29, 2015, Wein received a disciplinary letter from Principal Pretto for "leaving [his] class supervised by a paraprofessional." *Id.* ¶ 14.[3] Pretto issued the letter after a disciplinary conference held a week earlier, which Pretto, Assistant Principal Avionne Gumbs, and Wein attended. *Id.* ¶ 15. Wein then received two formal observation reports during the year—one satisfactory, one unsatisfactory. On December 1, 2015, Gumbs observed one of Wein's pre-K classes and gave Wein an unsatisfactory report, which Wein contested at the time by submitting a rebuttal statement. *Id.* ¶¶ 17–18. On March 2, 2016, Gumbs gave Wein a satisfactory

---

[2] Wein signed all of his evaluation documents and declined to protest or submit rebuttal statements for the majority of them. Unless stated otherwise, Wein did not pursue a documented challenge to the evaluations discussed in this decision.

[3] In his Local Rule 56.1 counter-statement, Wein frequently declines to dispute that a DOE record (*e.g.*, a letter, observation report, or other document) contained certain content, while stating, in a conclusory manner, that he disputes the truth of the statements made in these records. *See, e.g.*, Pl. 56.1 ¶ 14. Because these records are admissible business records of the DOE, their contents may be considered for the truth of the matters stated therein, except where these statements present separate evidentiary problems (*e.g.*, where a statement in the record embeds a layer of hearsay). Accordingly, the Court, subject to that qualification and pursuant to S.D.N.Y. Local Civil Rule 56.1(c), accepts the facts recited in such records as true except when Wein has cited admissible evidence sufficient to put the fact at issue in dispute.

observation report, but did so "with reservations."  Pl. 56.1 ¶ 19; 2015–2016 APPR at 13–14.

And on March 17, 2016, Pretto issued Wein another disciplinary letter, this time for allegedly

telling a parent to remove her son from Wein's class on the ground that "it would not be a

satisfactory experience with her son in the class," and that Wein did not want to receive "another

unsatisfactory rating on a lesson."  2015–2016 APPR at 12; *see* Def. 56.1 ¶ 21.  Again, Pretto

issued this letter after he had held a disciplinary conference with Assistant Principal James

Konstantinakos and Wein.  Def. 56.1 ¶ 22.

Ultimately, Wein received an overall unsatisfactory APPR rating for the 2015–2016

school year, which he did not appeal.  *Id.* ¶¶ 26–28; JSF ¶ 2.  In support of the rating, the APPR

cited (1) the December 1, 2015, observation report; (2) the October 29, 2015, disciplinary letter;

and (3) the March 17, 2016, disciplinary letter.  2015–2016 APPR at 3.

### 5. Wein's 2016–2017 Teaching Evaluations and December 2016 Corneal Injury

For the 2016–2017 school year, Pretto reassigned Wein from teaching pre-K to a "science

cluster" position, where classes of students from various grade levels circulated through his

classroom, even though Wein had expressed a preference for teaching pre-K.  Def. 56.1 ¶ 30;

Pl. 56.1 ¶¶ 87–89.  Wein claims that he received insufficient resources to support his teaching in

this new position, which he had never held before.  Pl. 56.1 ¶ 89.  He also alleges that Pretto had

previously moved three other older teachers—Lenora Carter, Jean Waugh, and Sharon Hodge—

to this position before ultimately "taking steps to remove them from the school."  Pl. 56.1

¶¶ 87, 88, 110.  In support, he primarily relies on his own deposition testimony.  *Id.*

Because Wein was no longer teaching pre-K, he became eligible to be evaluated under

the HEDI system, and he elected to receive six informal observation reports over the course of

the year, rated on a scale from highly effective to ineffective.  *See* Def. 56.1 ¶ 32.  On

October 26, 2016, Pretto conducted an informal observation, rating Wein's performance across eight components as follows: ineffective in four, developing in three, and effective in one. Def. 56.1 ¶ 32.  Regarding Wein's ineffective rating in the "Demonstrating knowledge of content and pedagogy" component, Pretto wrote that Wein's lesson was "designed for two grade levels below this class."  Finder Decl. Ex. G ("2016–2017 APPR") at 5.  Pretto also noted, in rating Wein ineffective in the "Designing coherent instruction" component, that Wein's "[l]earning activities are poorly aligned with the instructional outcomes, do not follow an organized progression, are not designed to engage students in active intellectual activity, and have unrealistic time allocations."  *Id.*  And he documented Wein's "uneven results" in terms of managing the classroom—for which Wein received a developing rating.  *Id.*  Further, Pretto stated in a field for "Additional Evaluator Notes" that Wein was "not prepared for this class of students to engage in grade-level standards-based instruction."  *Id.* at 7.  Pretto did, however, rate Wein as effective in the "Growing and developing professionally" component, stating that Wein was "reflective and collaborative in the feedback portion of this cycle."  *Id.* at 6.  Pretto also observed one of Wein's classes on November 23, 2016, and gave him a positive evaluation via email—noting, for example, that Wein had "implemented [] feedback regarding classroom management," while also providing additional constructive advice. Pl. 56.1 ¶¶ 33, 91–92.  But Pretto never memorialized this feedback in an observation report of any kind.  *Id.* ¶¶ 91–92.

Ultimately, the October 26, 2016, observation report would be Wein's only one for the 2016–2017 year.  On December 22, 2016, Wein suffered a corneal ulceration, which led to an infection in the same eye.  *Id.* ¶ 93.  As a result, Wein was unable to teach from the date of his ulceration until May 10, 2017; the DOE approved his requests for "restoration of health" leave for the duration of his injury.  Def. 56.1 ¶ 34.  After Wein returned to P.S. 96 on May 10, 2017,

only 23 days[4] remained in the DOE's "observation and feedback cycle," and neither Pretto nor any other administrators undertook another observation of Wein's teaching. *Id.* ¶ 35.

Nonetheless, on June 26, 2017, Pretto gave Wein an overall unsatisfactory rating for the 2016–2017 school year.[5]  Pretto later acknowledged, as is undisputed, that this rating was based exclusively on the October 26, 2016, observation report issued by Pretto.  JSF ¶ 18.  Pretto also acknowledged that he had the option not to rate Wein at all for that school year.  Pl. 56.1 ¶ 95. Wein appealed this unsatisfactory rating to the DOE's Chancellor's Committee, arguing that he had improperly been rated under the "U/S" system, that Pretto could have conducted additional observations either before or after his health leave, and that Pretto could have, but chose not to, decline to rate Wein at all.  Def. 56.1 ¶ 38.  On December 15, 2017, after a hearing at which Wein was represented by his union advocate, the Committee denied his appeal and sustained Wein's 2016–2017 rating.  *Id.* ¶¶ 39–42.

### 6.     Wein's State-Law Challenges to His 2016–2017 APPR

#### a.     *Wein's SDHR Complaint*

Wein continued to seek review of his 2016–2017 APPR rating after the Chancellor's Committee denied his appeal.  First, on January 8, 2018, Wein filed a complaint with the SDHR, alleging for the first time that the DOE had discriminated against him on the basis of his age and

---

[4] DOE's Local Rule 56.1 statement states that only 18 days remained between Wein's return from health leave and the deadline for conducting observations.  Def. 56.1 ¶ 35.  Wein conclusorily disputes this.  Pl. 56.1 ¶ 35.  The document that DOE cites for this proposition states that, in 2017, observation reports needed to be completed by June 2.  *See* 2016–2017 *Advance* Guide at 7.  Thus, the Court accepts as true that DOE  had 23, not 18, days to complete any additional observations of Wein's teaching for the 2016–2017 school year.

[5] Wein had originally been slated for an APPR evaluation under the HEDI system, but he lost eligibility for such a rating after his leave between December 2016 and May 2017 caused him to fall short of the requisite six months of "active status" for the year.  Def. 56.1 ¶ 36.  Thus, he again received a rating on the "U/S" scale for the 2016–2017 school year.  *Id.*

disability (the "loss of vision due to corneal (eye) injury") by assigning him an unsatisfactory APPR rating for the 2016–2017 school year. *Id.* ¶ 47. The only employment actions that his SDHR Complaint complained about were the 2016–2017 unsatisfactory rating and the October 26, 2016, observation report supporting it. *Id.*

The DOE received the SDHR Complaint on March 16, 2018, and responded on May 16, 2018. *See id.* ¶¶ 111–13; JSF ¶ 24. On July 10, 2018, the SDHR rejected Wein's claims, finding that his case "did not reveal sufficient evidence of a *prima facie* case of discrimination." Def. 56.1 ¶ 49; Finder Decl. Ex. N ("SDHR Determination") at 2. First, the SDHR concluded that "a single negative performance evaluation" is not an "adverse employment action" within the meaning of the New York State Human Rights Law. SDHR Determination at 2. Second, the SDHR's investigation found no "causal nexus" between the APPR rating and Wein's age or disability. *Id.* The SDHR accordingly dismissed the complaint in its entirety and ordered the case closed. *Id.* On October 4, 2018, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the SDHR's findings, closed its file on the charge, and notified Wein of his right to sue within 90 days of receiving the notice. Def. 56.1 ¶ 50.

### b.     *Wein's Article 78 proceeding*

While his complaint pended before the SDHR, Wein brought a separate Article 78 Petition in New York State Supreme Court challenging his unsatisfactory rating as "arbitrary and capricious and bad faith." Def. 56.1 ¶ 43; Finder Decl. Ex. K ("Article 78 Petition") at 1. Unlike in the SDHR proceeding, however, Wein made no allegations of discrimination. *See* Article 78 Petition. Instead, he based his challenge exclusively on perceived procedural flaws with the issuance of the 2016–2017 APPR rating, arguing that (1) the DOE had violated its own policies by issuing him an APPR rating at all given the length of his health leave; (2) his rating was

supported by an insufficient number of observation reports; and (3) more generally, insufficient evidence supported his unsatisfactory rating.  *Id.* at 6–7.

On July 26, 2018, the state Supreme Court denied Wein's petition, finding that "[t]he decision to sustain petitioner's unsatisfactory rating was not arbitrary and capricious but rationally based upon Petitioner's poor pedagogical performance."  Finder Decl. Ex. L ("Article 78 Judgment & Order) at 5.  Like the Article 78 Petition itself, the Supreme Court's dismissal of Wein's claims did not address any allegations of age or disability discrimination.  It found only that his unsatisfactory rating was sufficiently related to his pedagogical performance so as to render it not "arbitrary and capricious."  *Id.*

### 7.    Wein's 2017–2018 Evaluations and Disciplinary Issues

Before Wein filed his state-law challenges to the 2016–2017 APPR rating, Pretto again reassigned him for the 2017–2018 school year—this time to teach social studies to seventh and eighth graders, including a mix of special and regular education students.  Def. 56.1 ¶ 51; Pl. 56.1 ¶ 99.  As with the science-cluster position, Pretto reassigned Wein to this role notwithstanding Wein's request to teach pre-K students.  Pl. 56.1 ¶ 99.  Wein had never held this position before, and it was outside both his expertise and the area in which he was licensed to teach.  *Id.* ¶¶ 96–99.

Wein's evaluations remained negative over the course of the 2017–2018 year.  On October 12, 2017, Konstantinakos conducted a formal classroom observation and rated Wein developing in six components and ineffective in one,[6] noting his "lack of awareness" of how certain concepts related to one another, his failure to cognitively challenge his students, and his "uneven results" in monitoring the classroom.  Finder Decl. Ex. O ("2017–2018 APPR") at 12–13;

---

[6] Because Wein was again teaching above the pre-K level, he was eligible for rating under the HEDI system for the 2017–2018 school year.  Def 56.1 ¶ 65.

*see* Def. 56.1 ¶ 53.  On November 10, 2017, Konstantinakos conducted an informal observation, rating Wein developing in five components and ineffective in three.  This report stated that Wein "displays little understanding of prerequisite knowledge important to student learning," "poorly aligned" his teaching with the relevant instructional outcomes, and, again, had "uneven" results with managing disrespectful behavior.  2017–2018 APPR at 16–17.  On January 16, 2018, following a disciplinary conference, Konstantinakos issued a disciplinary letter to Wein that reprimanded him for throwing "a carrot in the direction of a student."  Def. 56.1 ¶¶ 57–58.  On March 2, 2018, Konstantinakos conducted another informal evaluation, this time rating Wein developing across seven components.  *Id.* ¶ 60.

Finally, on April 7, 2018, Pretto issued an observation report based on a March 18, 2018, observation, rating Wein ineffective in every component.  *Id.* ¶¶ 62–63; Pl. 56.1 ¶ 102.  In the observation report, Pretto remarked that Wein simply told his students "to be quiet and watch a movie," and that student interactions were marked by "sarcasm, put-downs, or conflict."  2017–2018 APPR at 24.  He also wrote that Wein's classroom interactions "are mostly negative, inappropriate, or insensitive to students' ages, cultural backgrounds, and developmental levels."  *Id.*  And, as in Konstantinakos's earlier reports, Pretto described Wein's questions as "low cognitive challenge."  *Id.* at 25.  Notably, this was Wein's first evaluation after the DOE's receipt

of his SDHR Complaint (March 16, 2018) and when, he alleges, Pretto thereafter became aware of the SDHR proceeding.[7]  Pl. 56.1 ¶ 102.

Two additional disciplinary issues arose regarding Wein towards the end of the 2017–2018 school year, after Wein filed his SDHR Complaint.  First, on April 10, 2018, a paraprofessional notified Pretto that she had seen Wein "flip" or "pop" a cot on which a four-year-old, pre-K student was napping.  Def. 56.1 ¶ 68.  Pretto then reported the incident to the New York City Special Commissioner of Investigations ("SCI"), which referred the matter to the NYPD School Safety Division ("SSD").  *Id.* ¶¶ 69–70.  Although the SSD did not pursue the investigation, *id.* ¶ 71, on March 27, 2019, the SCI determined that Wein had purposely flipped the cot, causing the four-year-old to fall on the floor and hurt her stomach, *id.* ¶ 72.  In its report, the SCI recommended disciplinary action against Wein, including his potential termination.  *Id.* ¶ 73.

Second, on May 22, 2018, two students informed Pretto that they had witnessed Wein attempt to kiss two seventh-grade students in January or February 2018.  *Id.* ¶ 74.  Pretto reported the incident to the SCI, which referred it to the DOE's Office of Special Investigations ("OSI") and the SSD.  *Id.* ¶¶ 74, 76.  Ultimately, the matter was referred to the DOE's Office of Equal Opportunity and Diversity Management, where the investigation remains open.  *Id.* ¶ 77.

---

[7] The parties' submissions, and the record supporting them, are less than pellucid as to precisely when Pretto, or any other member of the P.S. 96 administration, became aware of Wein's SDHR Complaint.  *See, e.g.*, JSF ¶ 23; Pl. 56.1 ¶ 102.  It is undisputed that the DOE received Wein's complaint by March 16, 2018, the date shown on the DOE Legal Services stamp affixed to the document.  *See* JSF ¶ 24.  At Pretto's deposition, however, he stated that he did not remember when he became aware of Wein's SDHR Complaint, although a privilege log produced by the DOE suggests he might have received notice of it on April 2, 2018.  *See* Pl. 56.1 ¶ 112.  Pretto acknowledged, however, that he eventually did become aware of the complaint and assisted with the DOE's response to it, which was filed on May 16, 2018.  JSF ¶¶ 23, 25.  Viewing the facts in the light most favorable to Wein, and making reasonable inferences therefrom, the Court assumes that Pretto (and other members of the P.S. 96 administration, including Konstantinakos) became aware of the complaint before April 7, 2018.

11

On May 23, 2018, the DOE's Director of Employee Relations administratively reassigned Wein from his teaching duties to a "non-student-contact" position. *Id.* ¶ 75. As a result of this reassignment, Wein argues, he became ineligible for "per session" work. *See* Pl. Mem. at 11–12. Wein remains reassigned from his teaching duties while the investigation pends. Def. 56.1 ¶ 80.

Ultimately, on May 24, 2018, for the first time eligible for a year-end APPR rating under the HEDI system, Wein received ineffective ratings on both his MOTP and MOSL for the 2017–2018 school year. *Id.* ¶¶ 65–66. This produced an overall ineffective rating for the entire year. *Id.* Wein appealed this rating to the Chancellor's Committee, but the Committee, after a hearing, sustained it. *Id.* ¶ 67.

### 8. The DOE's Disciplinary Proceedings Against Wein

On September 5, 2018, pursuant to N.Y. Educ. Law § 3020-a, the DOE brought disciplinary charges against Wein before the DOE Unit of School District Employer-Employee Regulations, specifying six charges: (1) failing to plan or execute a number of observed classes between November 2015 and March 2018; (2) throwing a carrot at a student in November 2017; (3) pushing a desk into a student, also in November 2017; (4) asking a parent to remove her son from a classroom during an observation session in March 2016; (5) failing to supervise students in the schoolyard in October 2015; and (6) more generally, failing to "fully and consistently implement directives and recommendations for pedagogical improvement and professional development" from 2015 to 2018. *Id.* ¶ 78. On March 21, 2019, the DOE added a seventh charge, regarding the cot-flipping incident, after the SCI issued its report on the matter. *Id.* ¶ 79. These charges remain pending. *Id.* ¶ 80.

### B. Procedural History

On November 29, 2018, Wein filed his complaint in this action. Dkt. 1. The DOE filed its answer on February 22, 2019, denying most of Wein's allegations and asserting that the

complaint was barred both by the exhaustion provisions in the statutes under which Wein had

sued and by the doctrines of claim and issue preclusion, citing the state proceedings on Wein's

Article 78 Petition.  Dkt. 8 at ¶¶ 56–59.

On October 25, 2019, after the close of discovery, the Court held a case-management and pe-

motion conference to discuss the DOE's proposed motion for summary judgment.  On

December 13, 2019, after several extensions owing to the parties' inability to agree on

undisputed facts, the parties filed a joint statement of undisputed facts.  Dkt. 41.

On December 17, 2019, the DOE filed a motion for summary judgment, Dkt. 42; an

accompanying memorandum of law, Dkt. 45 ("Def. Mem."); a Rule 56.1 statement, Def. 56.1;

and the Finder Declaration, Dkt. 43, and accompanying exhibits.  On January 1, 2020, Wein

submitted his opposition brief, Dkt. 48 ("Pl. Mem."); his counter-statement to the DOE's

Rule 56.1 statement, Pl. 56.1; and the Glass Declaration, Dkt. 46, and accompanying exhibits.

On January 13, 2020, the DOE submitted its reply brief, Dkt. 49 ("Def. Reply").

## II.      Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The

movant bears the burden of demonstrating the absence of a question of material fact.  In making

this determination, the Court must view all facts "in the light most favorable" to the non-moving

party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In cases that involve claims of discrimination or retaliation, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d at 137; *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

**III.    Discussion**

Wein brings claims of discrimination and retaliation under the ADA, Rehabilitation Act, and ADEA.  The DOE argues, however, that Wein's claims can be put aside without reaching their merits.  To this end, it argues that most claims are barred because Wein failed to exhaust them before the SDHR and that Wein's Article 78 proceeding provided him a full, fair hearing on his challenge to his 2016–2017 APPR rating, collaterally estopping him from challenging that rating.  The Court first considers these threshold issues and, finding most claims properly before the Court, considers the sufficiency of the evidence supporting Wein's claims.

**A.    Threshold Issues**

**1.    Exhaustion of Claims Before the SDHR and EEOC**

The DOE argues that, because—as is undisputed—Wein's SDHR Complaint took issue only with his 2016–2017 APPR rating, he has failed to administratively exhaust the balance of his discrimination claims.  *See* Def. Mem. at 4–5.  Wein responds that his allegations about the DOE's actions towards him after it received his SDHR Complaint all fall into an exception to the exhaustion requirement for conduct "reasonably related" to a pending complaint, because, he alleges, these actions were retaliation for his SDHR Complaint.  *See* Pl. Mem. at 2, 5.  Wein thus argues that he is not barred from challenging here: (1) Pretto's April 2018 observation report; (2) Wein's 2017–2018 ineffective APPR rating; (3) the reports of misconduct regarding the cot incident and Wein's attempt to kiss two students; and (4) the disciplinary proceedings and § 3020-a charges resulting in Wein's reassignment to a non-teaching position.  Wein's argument on this point is the more persuasive.

Before suing in federal court under the ADA or ADEA,[8] a plaintiff must first file a charge of discrimination with the EEOC and state or local equivalent within 300 days of the alleged discriminatory conduct.  *See* 42 U.S.C. § 2000e-5(c)–(e) (Title VII); 42 U.S.C. § 12117(a) (adopting the Title VII framework for ADA claims); 29 U.S.C. §§ 626(d)(1), 633(b) (imposing a similar framework for ADEA claims); *Terry*, 336 F.3d at 151 (noting that the "administrative exhaustion requirement is the same under the ADEA as it is under Title VII"). Even when a plaintiff timely proceeds through this process, federal courts generally may review only the specific claims of discrimination set forth in the complaint before the agency.  *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 613–14 (2d Cir. 1999).  This requirement ensures that "the administrative agency [has] the opportunity to investigate, mediate, and take remedial action" on discrimination claims before the federal courts intervene.  *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985).

However, the Second Circuit has "relaxed" the exhaustion requirement as to conduct that occurs after a plaintiff has filed an EEOC charge and is "reasonably related" to that charge.  *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *superseded by*

---

[8] The DOE asserts that the Rehabilitation Act contains a similar administrative exhaustion requirement, citing *Smith v. Potter*, No. 07 Civ. 1787(JG), 2008 WL 4371364, at *4 (E.D.N.Y. Sept. 19, 2008).  *See* Def. Mem. at 4.  Although Wein does not contest this point, the DOE is incorrect.  In this Circuit, the Rehabilitation Act requires the exhaustion of administrative remedies only in cases brought by federal employees, not by those who work for federally funded employers, like Wein.  *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81–82 (2d Cir. 2020) ("[W]e have never held that a Rehabilitation Act claim against a non-federal employer is subject to an administrative exhaustion requirement, nor is there any statutory basis for imposing one."); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 169 n.11 (2d Cir. 2013) ("Courts have construed [§ 794a] of the Rehabilitation Act[,] as not imposing any exhaustion requirement as to claims against a recipient of federal funding, but as imposing one as to claims against a federal employer.").  *Smith*, on which the DOE relies, is inapposite, because it involved a federal employee.  In any event, this issue is immaterial because the Court finds the DOE's exhaustion argument unavailing even as to the ADA and ADEA.

*statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 107; *see, e.g.*, *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018).  Specifically, the Circuit has recognized three contexts where claims outside an administrative complaint are "sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action": (1) where "the conduct complained of would fall within the scope of the EEOC investigation"; (2) where the complaint is "one alleging retaliation for filing an EEOC charge"; and (3) where the complaint "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry*, 336 F.3d at 151 (quoting *Butts*, 990 F.2d at 1402–03).  In these circumstances, a plaintiff may turn to the federal courts without filing anew before the agency because "it may be unfair, inefficient, or contrary to the purposes of the statute to require a party to separately re-exhaust new violations." *Duplan*, 888 F.3d at 622.

Relevant here, the Second Circuit has identified the second circumstance—when "retaliation occurs while the EEOC charge is still pending before the agency"—as the "paradigmatic case for which the 'reasonably related' doctrine was adopted." *Id.*  That is because (1) courts can generally expect the agency investigation to uncover and address related retaliation; (2) there is little benefit to forcing the parties to undertake multiple concurrent agency proceedings on similar issues; and (3) requiring re-exhaustion could perversely encourage employer retaliation so as to impose additional costs on complaining plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination. *Id.* (citing *Butts*, 990 F.2d at 1402, and *Terry*, 336 F.3d at 151).

The Circuit, however, has not addressed the specific showing a plaintiff must make in order to demonstrate retaliation so as to trigger this exception.  Retaliation claims are not "per se

17

reasonably related," as such would grant "open season for litigating any sort of discrimination claim against the employer." *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d Cir. 1993). But the Circuit has "broadly construed [this exception] to allow judicial redress for most retaliatory acts arising subsequent to an EEOC filing." *Id.*; *see Terry*, 336 F.3d at 151; *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 410–411 (2d Cir. 1991). Consistent with this, courts in this Circuit have generally allowed claims to proceed when the plaintiff plausibly alleges that the post-charge conduct was retaliatory. *See, e.g.*, *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 470 (S.D.N.Y. 2011) (finding that "the preconditions for Plaintiff's retaliation claim have been met" for exhaustion purposes where the complaint "alleges retaliation for the filing of the EEOC charge"); *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 357 (E.D.N.Y. 2008) (excusing failure to exhaust because employee "claim[ed] that he ha[d] suffered retaliation because he pursued a discrimination charge"); *Rinsler v. Sony Pictures Entm't, Inc.*, No. 02 Civ. 4096 (SAS), 2003 WL 22015434, at *9 (S.D.N.Y. Aug. 25, 2003) (finding plaintiff's claims "reasonably related" because they "occurred after she filed an EEOC charge").

Consistent with this body of case law, the Court finds that Wein's challenges to the post-charge conduct here fall within this exception to the exhaustion requirement. Wein's SDHR filing complained of discrimination based on age and disability. *See* SDHR Complaint at 5, 8. His Complaint here explicitly pled that the DOE had unlawfully retaliated against him for bringing these charges. *See* Dkt. 1 ("Complaint") ¶¶ 47–54. And Wein has pointed to specific acts by the DOE towards him that occurred reasonably soon after he filed his SDHR complaint. *See* Pl. Mem. at 2; Def. 56.1 ¶¶ 62–80. Therefore, for exhaustion purposes, Wein sufficiently

has alleged that his claims challenging the DOE's conduct after his SDHR Complaint as retaliatory fall into the "reasonably related" exception to the exhaustion requirement.

This holding, of course, does not extend to Wein's challenges to conduct pre-dating the DOE's receipt of his SDHR Complaint—for example, Wein's 2015–2016 APPR rating and pre-April 2018 observation reports. Given the sequence of events, these acts cannot be considered retaliatory. Wein's failure to exhaust therefore bars his ADA and ADEA claims as to these acts. *See Duplan*, 888 F.3d at 623 (retaliation exception only applies to conduct occurring "after the filing of the initial EEOC complaint"). Wein appears to concede this point. *See* Pl. Mem. at 2, 5.

In holding that the exhaustion exception for "reasonably related" conduct applies, the Court rejects the DOE's argument that this doctrine is more restrictive, so as to permit here only Wein's challenge to his 2016–2017 APPR rating. Def. Reply at 2–3. Drawing on language from *Butts*, the DOE argues that Wein must show a "close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." *Id.* at 2 (citing *Butts*, 990 F.2d at 1402). But the Second Circuit and the courts applying its holdings have interpreted *Butts* to impose a fairly minimal burden on plaintiffs alleging retaliation. These cases do not require the "proof" of retaliation that the DOE contends is necessary, *see* Def. Reply at 2. Instead, they generally hold that the plausible allegation that subsequent conduct was retaliation for the protected activity of filing an administrative complaint suffices to plead the "close connection" *Butts* requires, so as to enable a federal court to consider the claim of retaliation on the merits. Wein has done so here.

In any event, even were the Court to apply the higher bar the DOE posits, Wein's claims would clear the hurdle. The DOE argues that the temporal distance between Wein's January 8, 2018 SDHR Complaint and the acts towards him that the DOE took in April and May 2018 (and

thereafter) is sufficiently large to negate any "close connection" between the events. Def. Reply at 2–3. But the DOE errantly identifies the starting point as January 2018. Instead, the time span for assessing the reasonableness of a retaliatory inference is properly measured for the DOE on March 16, 2018, when it received the complaint, and for Pretto in early April, when he became aware of it. *See Gonzalez v. NYU Langone Med. Ctr.*, No. 18 Civ. 1797 (PAE), 2019 WL 4194313, at *8 (S.D.N.Y. Sept. 3, 2019) ("[T]he more relevant comparison in determining whether an inference of retaliatory motivation is warranted is between the date when [defendant] was served with (and thereby became aware of) the [complaint] filed by [plaintiff] and the date of the adverse employment action taken against [plaintiff]."). And virtually all of the acts in dispute occurred soon after the DOE and Pretto became aware of the SDHR Complaint. These include the April 7, 2018, observation report; the April 10, 2018, report about the cot-flipping incident; the May 22, 2018, report about Wein's attempt to kiss two students and his reassignment the next day; and the May 24, 2018 ineffective 2017–2018 rating. *Cf. Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (collecting cases in this Circuit requiring the passage of no more than two months between a protected activity and retaliatory action to support an inference of retaliation). Even the DOE's September 5, 2018 filing of § 3020 charges against Wein is not fatally distanced from the point approximately five months earlier at which it became aware of Wein's SDHR filing. *See Gorzynski*, 596 F.3d at 110 (Second Circuit has "held that five months is not too long to find the causal relationship" necessary to make out a *prima facie* case of retaliation under the ADEA).

To be sure, the proximity of events may not alone suffice to make out a *prima facie* case of retaliation at the summary judgment stage. *See, e.g.*, *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 855–56 (S.D.N.Y. 2013). But there is a sufficient connection between the

DOE's alleged conduct and Wein's protected activity to trigger the exception to the exhaustion requirement for reasonably related post-charge acts.  *Cf. Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (holding that failure to exhaust under Title VII is an affirmative defense, which defendants bear the burden of showing).  Therefore, Wein has properly exhausted his challenge to his 2016–2017 APPR rating as well as to the DOE's post-complaint conduct.

### 2. Collateral Estoppel of Wein's Challenge to His 2016–2017 APPR Rating

The DOE next argues that, to the extent that Wein's claims under the ADA, ADEA, and the Rehabilitation Act challenge his 2016–2017 APPR, they are barred by the doctrine of collateral estoppel because that rating was the subject of his Article 78 Petition before the New York Supreme Court.  *See* Def. Mem. at 5–7.  Wein counters that the Article 78 proceeding did not address or resolve the claims of unlawful discrimination brought here.  Pl. Mem. at 6–7. Wein again has the better of the dispute.

Under New York law, the doctrine of collateral estoppel applies only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Abdelal v. Kelly*, 726 F. App'x 8, 10 (2d Cir. 2018) (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)); *see Colon*, 58 F.3d at 869 n.2 (holding that, under 28 U.S.C. § 1738, federal courts "give a prior state court decision the same preclusive effect that courts of that state would give to it").  Collateral estoppel applies only if it is "quite clear that these requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing on his or her claim.'"  *Colon*, 58 F.3d at 869 (quoting *Gramatan Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979)).  "The party asserting [collateral estoppel] bears the

burden of showing that the identical issue was previously decided, while the party against whom

the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to

litigate in the prior proceeding." *Id.*

The DOE cannot carry its initial burden.  Wein's Article 78 Petition did not put at issue

age or disability discrimination in that proceeding.  The petition does not mention Wein's age.

And although the petition does refer to his corneal injury, *see* Article 78 Petition ¶¶ 18–19, it

does not allege that the injury constituted a disability.  Instead, it refers to the injury solely to

explain why Wein took a leave of absence during the 2016–2017 school year and received only

one observation report that year.  These facts were important background to his procedural

objections to his rating.  *See id.* ¶¶ 36–38 (arguing that rating should be vacated because issuing

*any* rating after his leave of absence was a "violation of the NYCDOE's own procedure" and

because it was not supported by sufficient evidence).

And, critically, the petition does not contain any reference to discrimination.

The DOE contends that Wein's petition's use of the term "bad faith," *see id.* ¶¶ 1, 34–35,

was sufficient to put the DOE's discriminatory animus at issue.  But even if this reference could

have opened the door to the receipt of evidence of such animus during the Article 78 proceeding,

that stray phrase in a pleading does not signal that the proceeding "actually and necessarily"

addressed the issue.  *See Abdelal*, 726 F. App'x at 11 (finding "a conclusory reference to

discrimination" insufficient to support collateral estoppel).  Wein's case thus contrasts with

*Batyreva v. N.Y.C. Department of Education*, on which the DOE relies, in which the earlier

Article 78 Petition had expressly alleged discrimination against the petitioner based on Russian

ancestry.  *See* No. 07 Civ. 4544 (PAC) (DF), 2008 WL 4344583, at *9–10 (S.D.N.Y.

Sept. 18, 2008).

In any event, even had Wein's Article 78 Petition overtly alleged discrimination by the DOE on the basis of his age or disability, the New York Supreme Court's decision resolving his petition did not address or necessarily decide any claim of discrimination.  In contrast to *Batyreva*, in which the state court decision on which the claim of estoppel rested "reviewed [the petitioner's] claims of discrimination, retaliation and defamation" and "found them to be unsupported by the record," *see Batyreva*, 2008 WL 4344583, at *9, the New York Supreme Court decision upholding Wein's unsatisfactory rating did not mention "bad faith," let alone discrimination.  Instead, it held only that the rating "was not arbitrary and capricious," but instead had "some rational basis."  Article 78 Judgment & Order at 5.

The Second Circuit has held that in such circumstances collateral estoppel does not apply. Two years ago, in *Abdelal*, it held that a state court's finding that an adverse employment action had a rational basis "does not mean that the court considered and rejected" claims of unlawful discrimination.  726 F. App'x at 11; *see also Vargas v. City of New York*, 377 F.3d 200, 206 (2d Cir. 2004) ("While it is true that the Article 78 court passed upon the propriety of [the plaintiff's] termination, this acknowledgment does not demonstrate that the court 'actually and necessarily' decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination.")

Here, similarly, a review of the pleadings and decision in Wein's Article 78 proceeding does not reveal that that case involved, or that the state court considered or decided, claims by Wein of age or disability discrimination.  Wein's challenge to his 2016–2017 APPR rating is, therefore, properly before this Court.

### B.     Merits

The Court now addresses the merits of Wein's surviving claims, turning first to those under the ADA and Rehabilitation Act.  Because "[t]he standards used to determine whether the

[Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990," the Court addresses Wein's claims under these two laws together.  29 U.S.C. § 794(d); *see Petrone v. Hampton Bays Union Free Sch. Dist.*, 568 F. App'x 5, 7 n.1 (2d Cir. 2014) ("The elements of a discrimination claim under the ADA and section 504 of the Rehabilitation Act are identical and are analyzed under the same burden-shifting framework."); *Kho v. N.Y. & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 717–18 (S.D.N.Y. 2018) (applying same standard at summary judgment to discrimination claims under the ADA and Rehabilitation Act).  The Court then turns to Wein's age discrimination claims under the ADEA, and finally to his retaliation claims under each of these statutes.

### 1.     Discrimination Under the ADA and Rehabilitation Act

The ADA applies to state and local government employers along with private employers, and prohibits employers from discriminating "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The Rehabilitation Act, the exclusive route by which federal employees may raise claims of disability discrimination against the federal government, in turn prohibits "any program or activity receiving Federal financial assistance" from discriminating against an employee "solely by reason of her or his disability."  29 U.S.C. § 794(a).

Claims of discrimination under both the ADA and Rehabilitation Act are analyzed using the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Jackson v. N.Y.C. Dep't of Educ.*, 768 F. App'x 16, 17 (2d Cir. 2019) (ADA and Rehabilitation Act); *Petrone*, 568 F. App'x at 7 n.1 (same); *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA); *Heilwell v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994) (Rehabilitation Act).  At the first step of this analysis, the plaintiff bears the initial burden of showing, by a preponderance of the evidence, a *prima facie* case of discrimination by

establishing that: "(1) his employer is subject to the ADA [or Rehabilitation Act]; (2) he was disabled within the meaning of the ADA [or Rehabilitation Act]; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan*, 711 F.3d at 125 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  Generally, the burden of establishing a *prima facia* case is "minimal."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).  But a plaintiff cannot do so with "purely conclusory allegations of discrimination, absent any concrete particulars."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

If the plaintiff meets his or her burden at the first step, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–54 (1981)).  At that point, the burden of production shifts to the defendant, who must "'articulate some legitimate, nondiscriminatory reason for the' employer's conduct."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802).  The defendant's burden at this stage is "one of production, not persuasion."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).

If the defendant meets that burden, at the third step the presumption of discriminatory intent drops away, and the plaintiff must show "that the real reason for the adverse employment decision was discrimination."  *Mandell v. County of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003). In other words, a plaintiff "must show . . . that the defendant's proffered reason was pretextual." *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003); *see Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (plaintiff "must put forth adequate evidence to support a rational

finding that the legitimate non-discriminatory reasons proffered by the employer were false, and

that more likely than not the employee's [disability] was the real reason for the discharge").

Unlike in the Title VII context, under the ADA and Rehabilitation Act, a plaintiff must

show that his or her disability was the "but-for" cause of the employer's conduct—not merely a

"motivating factor."  *See Natofsky v. City of New* York, 921 F.3d 337, 348–49 (2d Cir. 2019);

*Bonds v. County of Westchester*, No. 19 Civ. 1712 (KMK), 2020 WL 4347704, at *9 (S.D.N.Y.

July 28, 2020) ("Ultimately, Plaintiff must establish not only the presence of a discriminatory

motive, but that this motive was a 'but-for' cause of the adverse action.").  "What this means in

the summary judgment context is that the plaintiff must establish a genuine issue of material

fact . . . as to whether the employer's reason for [any adverse action] is false *and* as to whether it

is more likely that a discriminatory reason" was the but-for cause of the adverse employment

action.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir. 1994)

(emphasis in original).

a.   Prima facie *case of disability discrimination*

The parties do not appear to dispute that Wein has established the first or third elements

of his *prima facie* case: that the DOE is covered by the ADA and the Rehabilitation Act and that

Wein, having held his teaching position for nearly two decades, was qualified for that post.  *See*

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (employment of seven

years satisfied *prima facie* burden of showing at least "minimal qualification").  The DOE

instead makes three other arguments.  First, it argues, a jury could not find that Wein's corneal

injury rendered him "disabled within the meaning of the ADA" and Rehabilitation Act, largely

because Wein has failed to produce medical evidence substantiating this disability.  *See* Def.

Mem. at 8–9.  Second, the DOE argues, Wein cannot show he has suffered any "adverse

employment action."  *Id.* at 10.  Finally, the DOE argues, Wein cannot establish that the DOE's

26

actions were taken *because of* his corneal injury, even if it did constitute a disability.  *See* Def. Mem. at 12–15.  Wein contests each point.  Pl. Mem. at 9–13.

The Court need not resolve the first two disputes here because, even assuming that Wein were correct on these points, he has not come forward with sufficient evidence on which a jury could find that the DOE took an adverse action *because of* his disability.  *St. Mary's*, 509 U.S. at 506.  Wein has not adduced any evidence that the DOE or any of its employees ever criticized him in "discriminatory terms" based on his eye injury, made any "invidious comments" about him or any other disabled persons, or treated non-disabled employees more favorably than him. *Mines v. City of N.Y./DHS*, No. 11 Civ. 7886 (JGK), 2013 WL 5904067, at *6 (S.D.N.Y. Nov. 4, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).  On the contrary, when asked at his deposition whether Pretto ever made "any comments to you about your eye injury," Wein responded, "No.  Quite the opposite.  He ignored it."  Finder Decl., Ex. F ("Wein Depo.") at 163; *see id.* at 170 (same for Konstantinakos).

To support his claim of discriminatory causation, Wein instead relies exclusively on the sequence of events after his eye injury.  The Second Circuit has recognized that the timing of an adverse employment action can, under certain circumstances, give rise to an inference of discrimination, *see Chambers*, 43 F.3d at 37.  Here, however, the timing of the events at issue "is not suspicious enough alone to create such an inference," *Bloomberg*, 967 F. Supp. 2d at 855.

First, there is little evidence that the employment actions Wein experienced after his corneal injury were more severe than those he experienced beforehand.  Months before his eye was injured, Wein received the exact same year-end APPR rating as he did for the year in which he allegedly became disabled: unsatisfactory.  *See* Def. 56.1 ¶ 26; JSF ¶ 2.  And that earlier rating, like his 2016–2017 rating, was reached even though he had only received a single unsatisfactory

observation report during the year (albeit alongside two disciplinary letters).  Def. 56.1 ¶¶ 14–26.

In one respect, in fact, Wein's 2015–2016 rating was supported by *less* evidence than the 2016–

2017 rating that was allegedly the product of disability discrimination:  In the earlier year, Wein

had received a second, satisfactory observation report.  That was not the case in 2016–2017.

Pl. 56.1 ¶ 19.

Second, other than the 2016–2017 APPR rating, Wein does not allege that he experienced

any adverse employment action attributable to disability discrimination until well after the DOE

became aware of his disability in December 2016.  When seeking to base a *prima facie* case on

temporal proximity alone, a plaintiff must "show[] that the protected activity was *closely*

*followed in time* by the adverse [employment] action."  *Gorman-Bakos v. Cornell Co-op*

*Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (alteration in original)

(emphasis added) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

"For mere temporal proximity to establish causality, the intervening period must be very close."

*Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 316 (S.D.N.Y. 2003) (quotation marks

and citation omitted); *cf. Smith*, 440 F. Supp. 3d at 343 (noting that, for allegations of retaliation,

courts in this Circuit generally require temporal proximity of at most two months to establish

causation).  Wein falls far short of the mark.  Aside from the 2016–2017 unsatisfactory rating

just discussed, he identifies only the following as potential adverse employment actions: (1) the

April and May 2018 SCI investigations and related disciplinary letters; (2) the May 2018

ineffective APPR rating for the 2017–2018 school year; and (3) the September 2018 § 3020-a

charges brought against him.  *See* Pl. Mem. at 10–12.  But these actions occurred at least 15

months after the onset of Wein's disability, and the § 3020-a charges arose much later.  As

reviewed below, the timing of these actions meshes far more convincingly with the DOE's non-

discriminatory justifications for its actions.  Regardless, they do not give rise to any inference that they were caused by disability discrimination.

Lacking both evidence of discriminatory animus and a basis to infer discrimination based on the temporal proximity of events, Wein is left only with conclusory statements accusing Pretto of discriminatory intent.  *See, e.g.*, Pl. Mem. at 10 ("Principal Pretto punished him with an Unsatisfactory annual rating for the 2016–17 school year because of his disability.").  But even at the less demanding step one of the *McDonnell Douglas* framework, Wein cannot meet his burden merely through "reliance on unsupported assertions."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see ITC Ltd. v. Punchgini, Inc.*, 518 F.3d 159, 163 (2d Cir. 2008) ("Conjecture, of course, is insufficient to withstand summary judgment."); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (similar).  These unsubstantiated accusations do not give rise to a genuine dispute of material fact on the issue of causation.

Accordingly, on the summary judgment record, no reasonable juror could find that the DOE took adverse employment actions against Wein because of his disability, even assuming that he had such a disability and that the DOE took adverse actions against him.  Wein has failed to carry his minimal burden of establishing a *prima facie* case of discrimination.

### b.    *Legitimate and non-discriminatory reasons*

In the interest of completeness, the Court nonetheless considers the second and third steps of the *McDonnell Douglas* analysis.  The DOE has adduced ample evidence of "legitimate and nondiscriminatory" justifications for its actions with regard to Wein.  *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012).  The DOE summarizes that, "[o]ver a period of at

least three years, [Wein] failed to meet performance expectations and was involved in multiple incidents of reported misconduct and incompetence." Def. Mem. at 2.

There is abundant record evidence substantiating this contention, consisting of contemporaneous documentary evidence and follow-up reports by investigators outside of P.S. 96 that confirmed some of these claims. *See, e.g.*, Def. 56.1 ¶ 72. From at least 2014 through the disciplinary proceedings that continue to pend against Wein—including for a substantial period before Wein developed his alleged corneal disability—annual and periodic evaluations chronicled Wein's poor performance, questionable judgment, and sometimes hostile temperament. He was reprimanded for directing a parent to remove her child from his classroom solely so that Wein could avoid a negative evaluation; for engaging in occasional, bordering on frequent, physical altercations with students that, at least on one occasion, reportedly led to an injury; and, as repeatedly documented and reported to Wein, for failing to fulfill performance expectations for his teaching. Many of the reports documenting Wein's improper conduct or teaching deficiencies were issued by individuals who, unlike Pretto, Wein has not even alleged harbored independent discriminatory animus against him. Former-Principal Lugo and Assistant Principals Gumbs and Konstantinakos, for instance, issued unsatisfactory, developing, and ineffective ratings to Wein both before and after he allegedly became disabled. *See* Def. Mem. at 45–46.

Moreover, notwithstanding these longstanding problems, the DOE did not reassign Wein or launch formal disciplinary proceedings against him until May 2018—long after his disability arose—when allegations were made that he had attempted to kiss two seventh graders. *See* Def. 56.1 ¶¶ 2, 74–75. "Poor performance . . . is the *ne plus ultra* of legitimate, non-discriminatory business rationales." *Downey v. Adloox, Inc.*, No. 16 Civ. 1689 (JMF), 2018 WL 5266875, at *5 (S.D.N.Y. Oct. 23, 2018). The DOE has therefore met its burden, and then some, here.

c.       *Pretext and but-for causation*

Because Wein has failed to adduce evidence sufficient even to mount a *prima facie* case of disability discrimination, *a fortiori* his claims cannot withstand the more demanding inquiry at step three of the *McDonnell Douglas* analysis.  To survive summary judgment, Wein's "admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that [the DOE's] employment decision was more likely than not based in whole or in part on discrimination."  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (quoting *Terry*, 336 F.3d at 138).  In an ADA or Rehabilitation Act case, a plaintiff satisfies that burden by adducing evidence sufficient to show by a preponderance that the employer's purported reasons for its actions are mere pretext, and that discrimination was the real but-for cause of any adverse employment actions.  *See Natofsky*, 921 F.3d at 349; *Mandell*, 316 F.3d at 381.

In this analysis, temporal proximity alone, even though it can make out a *prima facie* case of discrimination, is "insufficient to demonstrate a pretext."  *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y 2008) (quoting *Kennebrew v. N.Y. Hous. Auth.*, No. 01 Civ. 1654 (JSR) (AJP), 2002 WL 265120, at *16 (S.D.N.Y. Feb. 26, 2002)) (pregnancy discrimination); *see Iverson v. Verizon Commc'ns*, No. 08 Civ. 8873 (SAS), 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("Merely claiming temporal proximity between the disclosure of disability and termination, however, is not enough to show that Verizon's reasons for termination were a pretext for discrimination.").  Accordingly, even had the timing of Wein's 2016–2017 APPR rating (or another adverse action) given rise to an inference of discrimination sufficient to make out a *prima facie* case, he would need additional evidence to clear step three.  Wein lacks such evidence.  As a result, no rational juror could find discriminatory causation for him at step three, other than by sheer speculation.

To be sure, Wein attempts to discount the voluminous, contemporaneous, documentary evidence of his poor teaching performance and disciplinary lapses by labeling these a "subtle tool" that Pretto deployed as a "pretext for discrimination." Pl. Mem. at 3. He argues that, because he disputes the accusations embedded in these documents, a dispute of material fact precludes summary judgment. *See id.* at 16; *see e.g.*, Pl. 56.1 ¶¶ 57–58, 60, 62 (disputing truth of "discriminatory and retaliatory" observation reports and disciplinary letters). But at step three of the *McDonnell Douglas* framework, Wein must produce *evidence* of discrimination, not merely dispute as unfounded the contemporaneous reports of his behavioral and pedagogical deficiencies. *See Kirkland*, 760 F.3d at 225. And "'purely conclusory allegations of discrimination' that are devoid of 'concrete particulars' do not suffice to avoid summary judgment." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (quoting *Meiri*, 759 F.2d at 998); *Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 66 (2d Cir. 2003) ("Here, an inference that Melville fabricated complaints would be based on nothing but speculation, lacking in the 'concrete particulars' required to defeat summary judgment."); *Kennebrew*, 2002 WL 265120, at *16 (plaintiff's "disagreements with her supervisor's perceptions of her work performance, alone, are not enough to show that the Housing Authority's proffered reason for terminating her was a pretext for discrimination").

Simply put, setting aside conclusory characterizations, Wein has not produced any evidence to suggest that disability discrimination played a role in—let alone was the but-for cause of—the DOE's challenged employment actions towards him. Because no reasonable jury could find that disability discrimination was the real, but-for cause of the DOE's action, the DOE is entitled to summary judgment on Wein's claims of disability discrimination under both the ADA and the Rehabilitation Act.

## 2.    Discrimination Under the ADEA

Wein's discrimination claims under the ADEA, which are similarly devoid of evidentiary support, fare no better.  The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a)(1).  In the Second Circuit, courts analyze age discrimination claims under the ADEA using the *McDonnell Douglas* burden-shifting framework.  *See Gorzynski*, 596 F.3d at 106. Thus, an ADEA plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination.  *Id.* at 107 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).  If the plaintiff makes this showing, the burden shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse action.  And if the employer does so, the burden shifts back to the plaintiff again, who "'must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor."  *Id.* at 106 (quoting *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 180 (2009)).

It is undisputed that Wein, born in 1958, falls within the group protected by the ADEA, *see* 29 U.S.C. § 631(a) (the ADEA protects people over age 40), and was qualified for the job he held, *see Slattery*, 248 F.3d at 92.  But even so, and again assuming that Wein suffered an adverse employment action, he has failed to carry his minimal burden of showing that the DOE's actions "occurred under circumstances giving rise to an inference of" age discrimination.  *See Gorzynski*, 596 F.3d at 107.

As with his disability claims, Wein does not point to evidence suggesting any specific reference to his age, let alone any discriminatory criticism or invidious remarks regarding it, by any person within the DOE.  *See* Def. Mem. at 12.  As he testified at his deposition when asked whether Pretto ever made any comments about his age, "No.  My age is my age.  This all happened when I was senior and older.  Nothing to comment about it.  More actions than words." Wein Depo. at 160; *see id.* at 169–70 (Q: "Did assistant principal Konstantinakos make comments to you about your age?"  Wein:  "No.  Nothing as blatant as that.  Again, their actions.").

Instead, to establish an inference of age discrimination, Wein relies on what he alleges was the similar treatment of three teachers who were either older or senior to him at P.S. 96: Lenora Carter, Sharon Hodge, and Jean Waugh.  *See* Pl. Mem. at 2–3, 12–13.  He asserts generally that once teachers reach age 55 and become pensionable, the DOE begins to assess them more harshly, and that he knows this from observations of the treatment accorded these three teachers.  For this conclusion, Wein relies on his own deposition testimony.  *See* Pl. Mem. at 12; *see also* Pl. 56.1 ¶ 110; Wein Depo. at 161 (Q:  "What is the basis of your allegation that this was related to your age?"  Wein:  "It all happened after I was 55 and pensionable. I think you're under closer scrutiny at that point.  You get these assignments and you get these poor positions when you're older.  I watched it happened.  I watched it happen to three ladies before me.  They were all more senior or older.").  As to the three ostensible comparators Wein cites, Pretto confirmed at his deposition that Carter and Waugh, like Wein, were moved to science clusters during his tenure as principal, but stated that Hodge was already in a cluster position when he arrived.  *See* Glass Decl., Ex. 1 ("Pretto Dep.") at 17, 41, 58–59.  Pretto also acknowledged that all three teachers were charged under § 3020-a, though the summary

judgment record is silent as to the circumstances and outcomes of those proceedings. *See id.* at 12, 14, 59.

Even construing these facts in the light most favorable to Wein, they do not give rise to an inference of discrimination. The Court accepts as true that each of the teachers to whom Wein likens himself was covered by the ADEA and experienced an adverse employment action when they were reassigned and/or became the subject of § 3020-a charges. But these spare facts, which do not disclose anything about the surrounding circumstances, are insufficient evidence to give rise to an inference of age discrimination. The evidentiary record developed by Wein does not shed light on the nature of the disciplinary charges against these teachers; the bases for these charges and the evidence supporting them; the presence or absence of indicia of age discrimination; the teachers' performance evaluations in the periods preceding their reassignments; the outcomes of the disciplinary proceedings against them; or whether these reassigned teachers were succeeded by younger teachers. *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012) (raising similar concerns), *aff'd*, 766 F.3d 163 (2d Cir. 2014). The record leaves unknowable whether, as Wein imagines, these employees were treated more harshly than other, younger employees who had behaved similarly, or whether these teachers were reassigned or sanctioned on account of performance deficiencies. It is also indeterminate on the summary judgment record whether these teachers were in all material respects situated similarly to Wein, who faced serious allegations of misconduct. "Simply put, the mere fact that [Wein] has identified [three] other older employees within [the DOE] who were" subjected to similar treatment as him "does not support an inference of discrimination." *Id.*

Moreover, the DOE has adduced evidence significantly undercutting Wein's theory that age discrimination explains his treatment: According to records from 2016–2017 and 2017–2018,

Wein was the *only* teacher over age 40 at P.S. 96 who received an ineffective or unsatisfactory

APPR rating for those school years.  *See* Finder Decl., Ex. V ("2016–2017 Demographic Data");

*Id.*, Ex. W ("2017–2018 Demographic Data").  And in 2016–2017 and 2017–2018, several P.S.

96 teachers who were older than or the same age as Wein received satisfactory or effective

ratings, including a 64-year-old teacher who received a highly effective rating in 2017–2018.

*See id.*  And, aside from Wein, the only P.S. 96 teacher who received an ineffective rating in

either of those two years was age 28.  *See id.*  This data would severely undermine any inference

of discrimination that could have been drawn from the DOE's treatment of the three individuals,

even had Wein adequately developed their circumstances.  *See, e.g.*, *Silva v. Peninsula Hotel*,

509 F. Supp. 2d 364, 382–83 (S.D.N.Y. 2007); *Magnan v. Manhattan Eye, Ear & Throat Hosp.*,

No. 01 Civ. 6306 (HB), 2002 WL 334505, at *4 (S.D.N.Y. Feb. 28, 2002).  Wein has not alleged,

let alone substantiated, that similarly situated, younger employees with similarly poor performance

evaluations or facing similarly serious claims of misconduct, were more favorably treated.

For all these reasons, Wein has not established a *prima facie* case of age discrimination.

Even if Wein had cleared the *prima facie* bar, summary judgment would still be

warranted for the DOE on his ADEA claims.  The evidence adduced as to the legitimate and

non-discriminatory justifications for the DOE's actions apply equally to his ADEA claims as to

his disability claims.  His persistently negative performance evaluations and disciplinary history

supplied ample grounds for the DOE's actions.  And, conclusory allegations aside, Wein has not

adduced any evidence that those justifications were pretexts for discrimination.  Accordingly, the

Court grants the DOE's motion for summary judgment on Wein's ADEA claim.

### 3.    Retaliation Under the ADA, Rehabilitation Act, and ADEA

Finally, the Court addresses Wein's retaliation claims.  Pursuant to all three statutes

under which Wein has sued, it is unlawful for an employer to discriminate against an employee

because that employee "has opposed any practice made unlawful by [the acts] or because such individual . . . made a charge, testified, assisted, or participated in any manner in" a proceeding under those acts.  42 U.S.C. § 12203(a) (ADA); *see* 29 U.S.C. § 623(d) (ADEA); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 148–49 (2d Cir. 2002) (applying same standard to ADA and Rehabilitation Act retaliation).

Courts analyze retaliation claims under these statutes using the same *McDonnell Douglas* framework discussed above.  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (ADEA); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA and Rehabilitation Act).  To make out a *prima facie* case of retaliation, a plaintiff must establish that: (1) he or she participated in a protected activity; (2) the employer was aware of this activity; (3) the employer thereafter took materially adverse employment action against him or her; and (4) there was a causal connection between the protected activity and the adverse employment action—*i.e.*, that a retaliatory motive played a part in the adverse action.  *Kessler*, 461 F.3d at 205–06; *Treglia*, 313 F.3d at 719.  And, as with the discrimination claims discussed above, once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision.  *Gorzynski*, 596 F.3d at 110; *Treglia*, 313 F.3d at 721.  If a defendant meets this burden, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *see Gorzynski*, 596 F.3d at 110; *Treglia*, 313 F.3d at 721.

Wein has satisfied his burden at the *prima facie* stage of his retaliation claim, at least as to his claim of disability discrimination.

As to the first prong of the *prima facie* test, Wein's SDHR Complaint stated, "I have been discriminated against in regard to disability," and checked the two boxes indicating the same. SDHR Complaint at 5, 8.  Generally, such a filing qualifies as a "protected activity."  *See, e.g.*, *Kessler*, 461 F.3d at 210 (SDHR complaint is a protected activity); *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 (S.D.N.Y. 2019) ("Zoulas alleges that she engaged in protected activity by filing her complaint with the SDHR on June 8, 2017.  Filing such a complaint constitutes protected activity.").

The DOE counters that, because the SDHR Complaint "makes no reference to any actions or remarks that could have provided [Wein] with a reasonable basis to conclude he was being discriminated against," Def. Mem. at 16, it does not demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law," *Manoharan v. Columbia Univ. Coll. of Phys. & Surg.*, 842 F. 2d 590, 593 (2d Cir. 1988) (quotation marks and citation omitted).  There is indeed little, if anything, to connect the DOE's actions to any discriminatory motive.  Nonetheless, the Court finds sufficient evidence that Wein acted in good faith and with a reasonable belief in claiming disability discrimination before the SDHR.  In July 2017, Wein received an unsatisfactory annual rating—only the second of his long career— immediately after a lengthy period of medical leave.  After that rating was sustained on appeal, he challenged it before the SDHR, noting that he had "suffered a corneal injury with resultant corneal infection," that he was "out of work on medically approved leave through May, 2017," and that, when he "returned to work," he had been given an unsatisfactory rating.  SDHR Complaint at 8.  Although the Court has found that this timing, standing alone, does not support an inference of discrimination, for purposes of the "protected activity" inquiry it is a sufficient basis on which a claimant, objectively reasonably and in good faith, could bring such an

allegation.  *See Treglia*, 713 F.3d at 719 (allowing a finding of good faith "even when the underlying conduct complained of was not in fact unlawful").  To be sure, there is no comparable series of events making Wein's age discrimination claim objectively reasonable; the SDHR Complaint did not recite facts supporting such a claim.  Nevertheless, the Court assumes *arguendo* that Wein possessed a good faith belief regarding that claim, too, at the time of the SDHR Complaint.

As to the second prong of the *prima facie* test, the DOE learned of Wein's SDHR Complaint, at the latest, on March 16, 2018.  *See* SDHR Complaint at 1 (date stamp); Pl. 56.1 ¶ 107.  For purposes of the retaliation analysis, this knowledge is attributable to Pretto, as all that is necessary to satisfy the knowledge requirement for a retaliation claim is "general corporate knowledge that the plaintiff has engaged in a protected activity."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000).  In any event, construing the facts in the light most favorable to Wein, the Court has already found that Pretto personally became aware of Wein's SDHR Complaint by April 7, 2018, at the very latest.  *See supra* n.7.  Wein thus has satisfied the second *prima facie* element.

As to the third *prima facie* prong, Wein has adduced sufficient evidence of an adverse employment action for purposes of his retaliation claims.  In the retaliation context, for an action to constitute an adverse employment action, an employee must show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  "This standard is broader than the adverse employment action requirement in the . . . discrimination context, because the action in

question need not affect the terms and conditions of employment in order to be considered adverse." *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 388 (S.D.N.Y. 2011).  In this District, this standard can encompass negative performance evaluations and disciplinary letters. *See, e.g.*, *United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 407 (S.D.N.Y. 2018) ("Negative evaluations may be considered adverse where the evaluation negatively impacted plaintiff's employment, although whether they do is typically a question of fact for the jury." (quotation marks and citation omitted)); *Saber v. N.Y. State Dep't of Fin. Servs.*, No. 15 Civ. 5944 (LGS), 2018 WL 3491695, at *7 (S.D.N.Y. July 20, 2018); *White*, 814 F. Supp. 2d at 389 (negative performance evaluations and a notice of discipline together satisfied the adverse-action requirement).  Taken together, Wein's April 7, 2018, performance report; 2017–2018 APPR rating; 2018 disciplinary letters and following investigations; and the § 3020-a charges that followed, constitute adverse action for retaliation purposes.

Finally, as to the *prima facie* case, Wein has adduced evidence sufficient to support a causal connection between his protected activities and the ensuing adverse actions.  As with his discrimination claims, Wein has not amassed direct evidence connecting his SDHR Complaint to the DOE's later conduct.  There are, for example, no emails or other written communications, or witness testimony, supporting the inference of a retaliatory motivation.  Wein instead asks that an inference of retaliation arise from temporal proximity: "that the protected activity was closely followed in time by the adverse action."  *Reed*, 95 F.3d at 1178.  Although the Second Circuit has not set out a "bright line" rule for when an allegedly retaliatory action occurs too far in time from a protected activity to be considered causally connected, *Gorman-Bakos*, 252 F.3d at 554, the two must generally occur "very close" together, *Sussle*, 269 F. Supp. 2d at 316.  As a result, courts in this Circuit have consistently held that the passage of two to three months between the

protected activity and the adverse employment action does not allow for an inference of

causation.  *Smith*, 440 F. Supp. 3d at 343 (collecting cases).

There was a shorter lapse of time here, so as to permit an inference of retaliation.  As

noted, although Wein filed his SDHR Complaint on January 8, 2018, the DOE did not become

aware of it until March 16, 2018, *see* SDHR Complaint at 1, which is therefore the proper date

from which to assess temporal proximity, *see Gonzalez*, 2019 WL 4194313, at *8

(S.D.N.Y. Sept. 3, 2019).  Less than one month later, Wein received a highly negative

observation report—the worst in the record—rating him ineffective in every single category.

Def. 56.1 ¶¶ 62–63.  Several days later, on April 10, 2018, Wein received a disciplinary letter

regarding his flipping a cot with a student in it, and the DOE launched an investigation into the

incident.  *Id.* ¶¶ 68–70.  On May 22, 2018, just over two months after the DOE received Wein's

SDHR Complaint, Pretto learned of and reported to the SCI allegations that Wein had attempted

to kiss two students, leading to another investigation and Wein's reassignment from teaching

duties.  *Id.* ¶¶ 74–77.  Finally, on May 24, 2020, Wein received an ineffective APPR rating for

the 2017–2018 school year.  *Id.* ¶¶ 65–67.  Thus, within about 10 weeks of Wein's filing of the

SDHR Complaint, Wein received a negative observation report, became the subject of two

investigations, received an ineffective year-end rating, and was removed from his teaching

position.  The DOE is correct that Wein's various negative evaluations before he submitted his

SDHR Complaint weaken any inference of causation.  *See* Def. Mem. at 17–18; *see, e.g.*,

*Kerman-Mastour v. FINRA*, 814 F. Supp. 2d 355, 373–74 (S.D.N.Y. 2011).  Nonetheless, the

evidence Wein has adduced is sufficient to carry his "minimal" burden of establishing a *prima*

*facie* case of retaliation at the summary judgment stage.

Wein's case, however, falters at the second and third stages of the *McDonnell Douglas* analysis.  As to evidence of a non-retaliatory justification, the same justifications that the DOE offered in connection with the discrimination claims for its actions towards Wein—his persistently poor performance, the allegations that he had endangered students, and the allegations that he had engaged in inappropriate conduct—provide legitimate non-retaliatory bases for these actions.  Before the DOE even learned of Wein's SDHR Complaint, Wein had already been disciplined once that year for throwing carrots at a student, received two negative performance evaluations in the 2017–2018 school year, and received a year-end unsatisfactory rating for the two years before.  *See* Def. Mem. at 17–18.  Wein's continuing, documented poor performance and disciplinary issues amply justified his continued negative evaluations and reprimands.  *Id.*  And the evidence supports that Pretto initiated each investigation of Wein promptly after learning of Wein's alleged misconduct.  *See id.* at 17.

The burden therefore shifts back to Wein to adduce evidence permitting a finder of fact to find by a preponderance that retaliation, not the above justifications, was the real reason for the DOE's adverse actions.  The summary judgment record cannot support such a finding.  As noted, Wein has not mustered any evidence in support of his retaliation claims other than proximity in time.  *See* Pl. Mem. at 15–16.  And while "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation," it alone "is insufficient to satisfy [Wein's] burden to bring forward some evidence of pretext." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 801–02 (S.D.N.Y. 2020) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).  This alone supports the grant of summary judgment on those claims.  *See El Sayed*, 627 F.3d at 933; *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05 Civ. 275 (RJS), 2009 WL 1583475, at *15 (S.D.N.Y. June 1, 2009)

(collecting cases); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 277 n.14

(S.D.N.Y. 2007); *Vosatka v. Columbia Univ.*, No. 04 Civ. 2936 (LAP), 2005 WL 2044857,

at *10–11 (S.D.N.Y. Aug. 25, 2005).  Accordingly, the DOE is also entitled to summary

judgment on Wein's retaliation claims under the ADA, Rehabilitation Act, and ADEA.

### CONCLUSION

For the foregoing reasons, the Court grants the DOE's motion for summary judgment in full.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 42

and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: August 19, 2020
New York, New York